IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CECELIA WOODS,                          §
                                        §
         Plaintiff,                     §
                                        §
v.                                      §     CIVIL ACTION NO. H-13-120
                                        §
CAROLYN W. COLVIN,[1]                   §
ACTING COMMISSIONER OF THE              §
SOCIAL SECURITY ADMINISTRATION,         §
                                        §
         Defendant.                     §

<u>**MEMORANDUM OPINION**</u>

Pending before the court[2] are Plaintiff's Motion for Summary Judgment (Doc. 17) and Defendant's Cross-Motion for Summary Judgment (Doc. 16).  The court has considered the motions, the responses, the administrative record, and the applicable law.  For the reasons set forth below, the court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claim for

---

[1]     Michael Astrue was the Comissioner of the Social Security Administration at the time that Plaintiff filed this case but no longer holds that position. Carolyn W. Colvin is Acting Commissioner of the Social Security Administration and, as such, is automatically substituted as Defendant. <u>See</u> Fed. R. Civ. P. 25(d).

[2]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docs. 11, 13.

disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff seeks benefits for a closed period, July 1, 2008, through December 31, 2008.

**A.   Medical History**[3]

Plaintiff was born on August 12, 1962, and was forty-five years old on the date of the alleged onset of disability.[4] Plaintiff completed the eighth grade and earned a General Equivalency Diploma in 1986.[5] Plaintiff worked as a waitress, cashier, and bartender until July 1, 2008.[6] Plaintiff's left, non-dominant arm was amputated in 1983 due to complications arising from intravenous drug use.[7] Between 2006 and 2010, Plaintiff suffered from back and hip pain, gastrointestinal issues, asthma, depression, hypertension, and carpal tunnel syndrome.

**1.   Back and Hip Pain**

On October 21, 2008, Plaintiff visited Murali Angirekula, M.D., ("Dr. Angirekula") at the Citrus Pain Clinic, primarily for

---

[3]     In order to qualify for benefits, a plaintiff must establish that she became disabled prior to the last date insured within the meaning of the statutes and regulations.  Carey v. Apfel, 230 F.3d 131, 134 (5th Cir. 2000); see also 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. §§ 404.130-404.132.  Plaintiff, in this case, was insured from July 1, 2008, through December 31, 2008.  See Tr. of the Admin Proceedings ("Tr.") 9, 42, 122, 124.  Because of these limitations, the court confines its review of the medical record to evidence that bears upon Plaintiff's ability to work between July 1, 2008, and December 31, 2008.

[4]     See Tr. 175, 196.

[5]     See Tr. 179, 224.

[6]     See Tr. 176.

[7]     See Tr. 236, 468.

back and hip pain.[8] Dr. Angirekula recorded that Plaintiff weighed 254 pounds, was comfortable at rest, and that her gait was normal.[9] However, Plaintiff complained that getting up from a chair or moving to a prone or supine position was very uncomfortable.[10] Dr. Angirekula also noted tenderness to palpitation in Plaintiff's lumbar region.[11] Dr. Angirekula indicated that Plaintiff was taking Tramadol for pain.

After taking an x-ray as part of the same examination, Dr. Angirekula found that Plaintiff had "mild degenerative disc space narrowing and facet hypertrophic changes."[12]   Plaintiff also complained that Tramadol did not sufficiently relieve her pain, because her pain remained at a moderate level when she was at rest.[13]   As a result, Dr. Angirekula changed her medication from Tramadol to Darvocet and suggested facet joint injections.[14]   About fifteen minutes after receiving the injections, Plaintiff reported a fifty-percent improvement in the pain.[15]

On November 20, 2008, Plaintiff visited Dr. Angirekula, again

---

[8]     See Tr. 459.

[9]     See Tr. 452.

[10]    See id.

[11]    See id.

[12]    Tr. 451.

[13]    See id.

[14]    See Tr. 453.

[15]    See Tr. 454.

for back pain.[16]  In this examination, Plaintiff said that her back pain had improved, but that Darvocet made her feel jittery.[17] Plaintiff also reported that there were no other changes to her health, medication, or allergies.[18]  Dr. Angirekula again noted that Plaintiff was comfortable at rest and that her gait was normal.[19] He observed that Plaintiff's getting up from a chair or moving to a prone or supine position was only mildly uncomfortable.[20]  Dr. Angirekula changed her medication from Darvocet to Tylenol #4 and suggested a caudal epidural steroid injection to help improve her back pain.[21]  The injections took place that day with no complications.[22]

Plaintiff returned to the clinic on January 2, 2009.[23]  At this visit, she was in tears due to pain in her left hip.[24]  She said that she had fallen on two separate occasions.[25]  She stated that she had not experienced any significant back pain or changes to her

---

[16]   See Tr. 546.

[17]   See id.

[18]   See id.

[19]   See id.

[20]   See id.

[21]   See Tr. 546-47.

[22]   See Tr. 547.

[23]   See Tr. 541.

[24]   See id.

[25]   See id.

health, medication, or allergies.[26]   In his examination, Dr. Angirekula noted that Plaintiff was in severe discomfort both at rest and with movement.[27]   In response, Dr. Angirekula changed her medication from Tylenol #4 to Lortab.[28]

Plaintiff's next visit to Dr. Angirekula was on March 19, 2009.[29]   Dr. Angirekula noted that Plaintiff recently had an upper gastrointestinal endoscopy and was told she had gastritis and to avoid taking anti-inflammatory medications.[30]   Dr. Angirekula noted that Plaintiff's back pain was fairly well-controlled and that she could cope with the pain during her day-to-day activities.[31]   Furthermore, she was comfortable at rest and her gait was comfortable when she walked in and out of the examination room.[32]   Dr. Angirekula mentioned that the injections had caused weight gain and Plaintiff had to be stricter with her diet.[33]

### 2. Gastrointestinal Issues

On November 17, 2008, Plaintiff visited a doctor at the Beverly Hills Medical Center who noted that Plaintiff had

---

[26]     See id.

[27]     See id.

[28]     See Tr. 542.

[29]     See Tr. 538.

[30]     See id.

[31]     See id.

[32]     See id.

[33]     See id.

epigastric pain.[34]  On November 20, 2008, Plaintiff visited Johannes Martensson, M.D., complaining of dysphagia, heartburn, and constipation.[35]  She received an esophagogastroduodenoscopy ("EGD") and colonoscopy on February 11, 2009.[36]  These two procedures revealed that Plaintiff had an ulcer, a medium-sized hiatal hernia, external and internal hemorrhoids, and polyps.[37]  On March 5, 2009, and on April 29, 2009, Plaintiff underwent additional testing.[38]  These tests determined that Plaintiff's ulcers had healed and the polyps were benign, but a hiatal hernia remained.[39]

### 3.  Other Ailments

Plaintiff has suffered from asthma since her childhood.[40]  At the time of the alleged onset of disability, Plaintiff's asthma symptoms were treated with Albuterol.[41]  Although Plaintiff smoked a pack of cigarettes a day, pulmonary examinations were within normal limits.[42]  Furthermore, Plaintiff indicated that she was not experiencing shortness of breath, coughing, or wheezing on the last

---

[34]     See Tr. 298.

[35]     See Tr. 245.

[36]     See Tr. 243, 294.

[37]     See Tr. 243-44.

[38]     See Tr. 240-242.

[39]     See id.

[40]     See Tr. 468.

[41]     See Tr. 236.

[42]     See Tr. 236, 245, 296, 298.

date insured.[43]

In addition, Plaintiff has a history of hypertension.[44] This condition was treated with Atenolol, and her blood pressure was found to be stable on October 16, November 17, and December 17, 2008.[45] At a doctor's appointment on December 31, 2008, her blood pressure was slightly elevated.[46]

On November 29, 2006, Plaintiff was diagnosed with major depressive disorder after complaining of depression, low energy, difficulty concentrating, and trouble sleeping.[47] At this visit, Plaintiff was prescribed Paxil and Ambien, but she stopped taking Paxil at some time before the date of the alleged onset of disability.[48] The record contains no further mention of Plaintiff's making any complaint of these symptoms until July 6, 2010.[49] Also, on an undeterminable date, Plaintiff was diagnosed with anxiety and prescribed Clonazepam.[50] However, the record contains no further mention of anxiety-related symptoms.[51]

---

[43]    See Tr. 294.

[44]    See Tr. 236.

[45]    See Tr. 245, 296, 298.

[46]    See Tr. 294.

[47]    See Tr. 335.

[48]    See Tr. 335, 451.

[49]    See Tr. 475.

[50]    See Tr. 236, 302.

[51]    See Tr. 236, 294, 296, 298, 298, 300, 546.

7

On May 8, 2008, Plaintiff was diagnosed with moderate right carpal tunnel syndrome, which affected her sensory components in that hand.[52]  As a result of this diagnosis, Plaintiff underwent right carpal tunnel release surgery on June 11, 2008.[53]  After surgery, Plaintiff visited Dr. Angirekula on October 21, 2008, and reported experiencing no pain or numbness in her right arm.[54]

## B.  Application to Social Security Administration

Plaintiff filed for disability insurance benefits on December 7, 2009, claiming an inability to work due to rheumatoid arthritis, degenerative joint disease, and high blood pressure.[55]

In a disability report completed near the time of her application, Plaintiff stated that she was five-feet-five-inches tall and weighed 243 pounds.[56]  She stated that her medical conditions prevented her from sitting or standing for long periods of time, bending, or lifting.[57]  In explaining why she stopped working, Plaintiff only stated, "my condition."[58]  Her medications at the time were Atenolol, Clonazepam, Hydrochlorothiazide, Lortab,

---

[52]    See Tr. 381.

[53]    See Tr. 354-55.

[54]    See Tr. 552.

[55]    See Tr. 171, 175.

[56]    See Tr. 174.

[57]    See Tr. 175.

[58]    Tr. 175.

and Zolpidem.[59]  She reported that both the Clonazepam and Lortab caused dizziness.[60]

Plaintiff stated that her daily activities included feeding and walking her dog, maintaining her personal hygiene, taking medications, preparing simple meals with some help, cleaning, going outside, doing the laundry, reading, watching television, talking on the phone, and grocery shopping as needed.[61]  According to the report, she could also walk, sit, and stand, for limited periods of time, manage money, and drive.[62]  Plaintiff stated that she required assistance getting out of the bathtub, cooking, folding and hanging clothes, vacuuming, and cleaning the bathroom.[63]

In a separate, undated disability report, Plaintiff added that her condition had worsened and she was depressed.[64]  She indicated that her new illnesses included, "disease, headaches, anxiety, [and] depression."[65]

A physical residual functional capacity report ("RFC") was completed by Randal Reid, M.D., ("Dr. Reid") on January 20, 2010.[66]

---

[59]    Tr. 178.

[60]    See id.

[61]    See Tr. 190-94.

[62]    See Tr. 192-94.

[63]    See Tr. 190-91.

[64]    See Tr. 202.

[65]    Id.

[66]    See Tr. 315-22.

Dr. Reid found that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push or pull without restriction.[67]  Dr. Reid further noted that there were no other limitations and the limitations listed were the result of a left arm amputation below the elbow and mild degenerative disc disease.[68]

Plaintiff's application was denied at the initial and reconsideration levels.[69]  Plaintiff requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration.[70] The ALJ granted Plaintiff's request and conducted a hearing on September 20, 2010.[71]

**C.  <u>Hearing</u>**

Plaintiff, Frank L. Barnes, M.D., ("Dr. Barnes"), a medical expert, and Herman Litt, a vocational expert ("VE"), testified at the hearing.

Plaintiff testified that she lost her job as a bartender because she was unable to stand through her entire shift.[72]  She

---

[67]     <u>See</u> Tr. 316.

[68]     <u>See</u> 316–22.

[69]     <u>See</u> Tr. 85, 98.

[70]     <u>See</u> Tr. 99–100.

[71]     <u>See</u> Tr. 51, 101–26.

[72]     Tr. 58.

also testified that she was unable to sit for long periods, but that her bartending job did not allow sitting.[73]   She stated that she had hip pain and that a doctor had advised her to consider a hip replacement.[74]   She further stated that she recently had been prescribed a cane to help relieve pressure on her hip.[75]   She related that she suffered from back pain, cramps in her right foot stemming from an operation in 1986, and difficulty breathing during the day.[76]

She testified that her right-hand fingers would go numb, preventing her from using buttons or shoelaces.[77]   She stated that a doctor had suggested an x-ray be taken, but that one had not yet been performed.[78]   She reported that she began taking medication for bipolar disorder about three weeks before the hearing.[79]   She disclosed that she weighed 235 pounds, which was thirty-five pounds less than she weighed nine months earlier.[80]

Plaintiff stated that, during the course of a normal day, she dusted, did laundry, watched television, read books, and took care

---

[73]   Tr. 59.

[74]   See Tr. 61-62.

[75]   Tr. 67.

[76]   Tr. 63, 66-67.

[77]   Tr. 65.

[78]   Id.

[79]   Tr. 68.

[80]   See Tr. 56, 61.

of her hygiene, but her roommate prepared meals.[81]  With regard to
her physical abilities, Plaintiff reported that she could not lift
more than five pounds, could not bend too much, and needed to sleep
one to two hours in the afternoon.[82]

Having reviewed the record and having heard Plaintiff's
testimony, Dr. Barnes identified her impairments to be lumbar
degenerative joint disease, post-surgical recovery from carpal
tunnel release, initial-stage peptic ulcer disease, and asthma.[83]
He stated that the combination of these impairments would not meet
or equal any Listing.[84]  Dr. Barnes also determined that Plaintiff
was impaired by not having a left hand.[85]  Dr. Barnes found that
Plaintiff could sit for eight hours a day, stand for two to three
hours a day, occasionally lift and carry ten pounds with her right
hand, frequently lift five pounds, push and pull with the same
weight limits as lifting, stoop and bend occasionally, and reach
without limitations.[86]  He further stated that she would need to
work in an indoor environment controlled for dust and toxins due to
her asthma.[87]  He noted that, while Plaintiff complained of hip

---

[81]   See Tr. 58, 60-61.

[82]   Tr. 58, 65, 68.

[83]   Tr. 70.

[84]   Tr. 70; 20 C.F.R. Pt. 404, Subpt. P, App. 1. (the "Listings")

[85]   Tr. 71.

[86]   Tr. 71-72.

[87]   Tr. 72-73.

12

problems, the only x-rays taken of her hip were performed in 2010. He explained that these x-rays showed arthritis, but that he could not determine the hip's condition on the last date insured, December 31, 2008.[88]

Based on his review of the record, the VE categorized Plaintiff's prior work as a waitress and bartender as semi-skilled and light and cashier as light and unskilled.[89] The ALJ asked if the skills from these jobs would transfer to any sedentary jobs, and the VE responded that only the skills from the cashier position would be transferrable.[90] The ALJ then asked the VE if Plaintiff could perform any past relevant work, given Dr. Barnes' testimony.[91] The VE responded that Plaintiff would not be able to perform any past relevant work.[92]

The ALJ asked the VE about vocational opportunities for a hypothetical individual who had the same vocational profile as Plaintiff, the same age, education, past relevant work experience, and the same limitations indicated by the testimony of Dr. Barnes.[93] The VE responded that such a person could be employed as

---

[88]   Tr. 73.

[89]   Tr. 77-78

[90]   Tr. 78.

[91]   Id.

[92]   Id.

[93]   Tr. 78-79.

13

surveillance monitor, order clerk, or cashier.[94]

Plaintiff's attorney questioned whether a hypothetical individual who has lost use of the left, non-dominant hand and could not perform fine, manual manipulation with the right hand could work as a cashier.[95] The VE responded in the negative.[96] The VE also testified that if the hypothetical individual had to lay down for one to two hours in an eight-hour workday that his person would not be able to perform any job in the national economy.[97]

**D.   Commissioner's Decision**

On September 28, 2010, the ALJ issued an unfavorable decision.[98] The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period and that she had multiple impairments (amputated arm below the left elbow, lumbar degenerative disc disease, asthma, gastroesophageal reflux disease, hypertension, and obesity) that were severe.[99] Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any Listing, according to the ALJ.[100]

---

[94]    Tr. 79-80.

[95]    Tr. 80.

[96]    Id.

[97]    Tr. 81.

[98]    Tr. 37.

[99]    See Tr. 42

[100]   See Tr. 45.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's medical record and Dr. Barnes' opinion.[101]   The ALJ found Plaintiff capable of performing jobs existing in significant numbers with the following limitations: lift, carry, push, and pull no more than ten pounds occasionally and no more than five pounds frequently with the dominant right arm; sit (with normal breaks) for a total of eight hours in an eight-hour workday; stand and/or walk (with normal breaks) for a total of two to three hours in an eight-hour workday; stoop and bend occasionally; and in an indoor environment, controlled for dust and toxins.[102]

Although the ALJ found that Plaintiff's medically determinable impairments could cause her claimed symptoms, the ALJ did not find Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" to be credible to the extent they were inconsistent with the ALJ's RFC determination.[103]   Relying on the VE's testimony that a hypothetical individual with Plaintiff's limitations could not perform her past relevant work, but could perform work that existed in significant numbers in the national economy, the ALJ found Plaintiff not to be disabled.[104]

Plaintiff appealed the ALJ's decision, and the Appeals Council

---

[101]    See id.

[102]    See Tr. 46.

[103]    Tr. 47.

[104]    See Tr. 48-49.

15

denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[105] Plaintiff then timely sought judicial review of the decision by this court.

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A.   Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.   Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702

---

[105]   See Tr. 1-5, 32.

F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. §§ 404.1520, 416.920.  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999).  If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

**B.**   **Substantial Evidence**

The widely accepted definition of "substantial evidence" is

"that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000).   It is "something more than a scintilla but less than a preponderance." <u>Id.</u>  The Commissioner has the responsibility of deciding any conflict in the evidence. <u>Id.</u>  If the finding of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g); <u>Selders v. Sullivan</u>, 914 f.2d 614,617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. <u>Id.</u>

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Specifically, Plaintiff asserts that the ALJ's decision contains the following errors: (1) the ALJ erred in finding Plaintiff's combination of depression and anxiety not to be

severe; (2) the medical expert erred in not including all of Plaintiff's impairments in his testimony; (3) the ALJ erred in giving weight to the testimony of the vocational expert because the expert failed to consider Plaintiff's amputated left arm.[106]

Defendant argues that the decision is legally sound and is supported by substantial evidence.

## A.   <u>Severity of Depression and Anxiety</u>

Plaintiff argues that the record continuously references both depression and anxiety, and Plaintiff's lack of treatment for these conditions between the alleged onset of disability, July 1, 2008, and the last date insured, December 31, 2008, only represents a temporary lull in those conditions.   Plaintiff also argues that there existed related symptoms at the time she applied for benefits.   Plaintiff contends that, as a result of these factors, the ALJ should have determined Plaintiff's mental impairments to be severe.   Additionally, Plaintiff claims that "the ALJ must determine the extent to which the mental impairment accounts for the claimant's subjective complaints," citing to <u>Latham v. Shalala</u>,

---

[106]     Plaintiff also states that the ALJ was required to consider Plaintiff's ability to sustain employment, citing to <u>Singletary v. Bowen</u>, 798 F.2d 818 (5th Cir. 1986). There, a man was able to gain employment, but could not sustain employment due to a mental condition. <u>Id.</u> However, a later case, <u>Frank v. Barnhart</u>, 326 F.3d 618, 621 (5th Cir. 2003), determined that this analysis was only necessary if the facts showed a condition that "waxed and waned" that prevented a plaintiff from sustaining employment. Plaintiff has failed to identify any facts indicating a condition which waxed and waned that prevented Plaintiff from sustaining employment.

36 F.3d 482 (5th Cir. 1994).[107]

Defendant responds by noting that the record indicates that Plaintiff sought medical help for her depression on only two occasions, once in 2006 and again in 2010, and that both times are outside the relevant time period. Further, Defendant stresses that most mentions of depression in the record are in reference to Plaintiff's 2006 hospital visit.

At step two of the disability analysis, the ALJ must determine whether the alleged impairments are severe or not severe. See 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(iii), (c). A severe impairment is one that significantly limits an individual's ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.92(a). Basic work activities are those abilities and aptitudes required for most jobs, including walking, sitting, seeing, hearing, and understanding and carrying out simple instructions. 20 C.F.R. §§ 404.1521(b), 416.921(b).

The Fifth Circuit instructs that an impairment is not severe if it is a "slight abnormality" that has such a "minimal effect on the individual that it would not be expected to interfere with an individual's ability to work, irrespective of age, education or

---

[107]   Doc. 17, Pl.'s Mot. For Summ J. p. 5. Plaintiff mischaracterizes <u>Latham</u>. There, the Fifth Circuit held that, "when medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms." <u>Latham</u>, 36 F.3d at 484.

work experience." Herrera v. Comm'r of Soc. Sec., 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (unpublished) (quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)).

The ALJ acknowledged that Plaintiff had been diagnosed with and received treatment for depression but found that it did not significantly limit Plaintiff's ability to perform work-related activities.[108] The record supports this conclusion.

Plaintiff was first diagnosed with and treated for depression in November 2006.[109] At that visit, she was prescribed Paxil and Ambien.[110] On the date of the alleged onset of disability, Plaintiff was taking Ambien but not Paxil.[111] From the date of the alleged onset of disability through the last date insured, the record indicates that Plaintiff made no complaints to a doctor of any depression-related symptom.[112] Furthermore, the record indicates that Plaintiff did not see a doctor for depression-related symptoms again until 2010.[113] Similarly, while Plaintiff was diagnosed with anxiety, the record contains no mention during the relevant period of any anxiety-related symptom.[114]

---

[108]   See Tr. 44.

[109]   See Tr. 335.

[110]   See id.

[111]   See Tr. 335, 451.

[112]   See Tr. 236, 294, 296, 298, 300, 546.

[113]   See Tr. 475.

[114]   See Tr. 236, 294, 296, 298, 300, 546.

Although Plaintiff claimed that she suffered from both depression and anxiety, there is no record evidence of her making complaints of relevant symptoms to a doctor during the relevant time period or of resulting functional limitations. Absent evidence of a significant limitation in Plaintiff's ability to perform work-related activities due to depression, anxiety, or a combination of both, the court finds that the ALJ's determination is supported by the record.

**B.   Inclusion of All Impairments**

Plaintiff contends that regardless of whether her mental health issues were considered severe, they should have been regarded as an impairment for the purposes of her RFC. Plaintiff also contends that she did not have the ability of fine manipulation in her right hand and this impairment was not considered in the RFC.

Defendant responds that Dr. Barnes did not take mental health impairments into account when formulating Plaintiff's RFC because the record contained no mention of related symptoms during the relevant time period.

In determining the RFC, the ALJ is required to include any impairment, even those that are not severe, that will affect what the Plaintiff can do in a work setting. See C.F.R § 404.1545(a)(1), (e). The RFC represents the most that a Plaintiff can do despite any limitations. C.F.R. § 404.1545(a). Further, the

Fifth Circuit has held that, "a person's 'residual functional capacity' is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." Hollis v. Bowen, 837 F.2d 1378, 1386-87 (5th Cir. 1988). Hollis v. Bowen also holds that impairments in Plaintiff's testimony can be excluded from the list of impairments if there is no other evidence to corroborate that testimony. See Hollis, 837 F.2d at 1387.

When asked about the effect of her illnesses, injuries, or conditions in her disability report, Plaintiff listed only physical limitations.[115]  Further, the record indicates that Plaintiff did not complain of mental limitations at any doctor's appointment during the relevant period or at the hearing before the ALJ.[116] Moreover, her attorney did not include any mental limitations in his proposed hypothetical to the VE.[117]

After her June 2008 surgery, Plaintiff did not complain of pain or numbness in her right hand until her hearing testimony where she stated that she had trouble manipulating buttons and laces.[118]  At an October 21, 2008 doctor's appointment, Plaintiff

---

[115]    See Tr. 175.

[116]    See Tr. 55-69, 236, 294, 296, 298, 300, 546.

[117]    See Tr. 80.

[118]    See Tr. 60, 236, 294, 296, 298, 300, 546.

23

was given a picture of the human body and asked to shade wherever she had pain or numbness and she did not shade any part of her arm or hand.[119]

Absent evidence of any limitations in Plaintiff's use of her right arm or resulting from a mental impairment during the relevant time period, the court finds the ALJ's RFC determination to be supported by substantial evidence.

## C. Inclusion of Plaintiff's Amputated Left Arm in the VE's Testimony

Plaintiff argues that it is not clear whether the VE accounted for Plaintiff's amputation. During his testimony, Dr. Barnes was instructed to list Plaintiff's medical conditions from July 1, 2008 to December 31, 2008.[120]   In his response, he failed to mention Plaintiff's left-arm amputation.[121]   However, Dr. Barnes later included Plaintiff's amputation when he responded to other questions about Plaintiff's physical limitations.[122]   During his testimony, the VE was asked to include in his assessment only the limitations listed by Dr. Barnes. Plaintiff contends that the jobs suggested by the VE, cashier, surveillance monitor, and order clerk, all require two hands, indicating that the VE failed to consider Plaintiff's amputation.

---

[119]   See Tr. 552.

[120]   See Tr. 70.

[121]   See id.

[122]   See Tr. 71.

The Fifth Circuit has instructed that, in determining the validity of the hypothetical question given to the vocational expert:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

> However, the Fifth Circuit has made clear that:

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

Carey, 230 F.3d at 146-47.

Dr. Barnes referenced the left-arm amputation when discussing Plaintiff's physical limitations and did so in the presence of the VE. Several minutes later the VE was asked to include those limitations in his assessment. The record supports a conclusion that the VE factored Plaintiff's amputation into his assessment.

Moreover, Plaintiff failed to raise any question that the left-arm amputation would affect her ability to perform these jobs at the hearing. Finally, Plaintiff fails to explain why these jobs

require the use of two hands.  The court notes that Plaintiff was able to use a cash register for many years after her left-hand amputation.  Accordingly, the court finds that the testimony of the VE contained no deficiencies.

Finding no legal error in the ALJ's decision and finding that substantial record evidence supports the conclusion that Plaintiff is not disabled, the court cannot overturn the decision.

### IV.  Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this <u>10th</u> day of June, 2014.

Nancy K. Johnson
United States Magistrate Judge